UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,                       :
                                                :
                        Plaintiff,              :
                                                :         **MEMORANDUM AND ORDER**
               -against-                        :            08-cr-860 (DLI)
                                                :
COURTNEY GEORGE MILLER,                         :
     a/k/a "Martin Davis Morris," and           :
     "Ralph Nathan Stokes,"                     :
                                                :
                        Defendant.              :
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Defendant is charged with use of a passport secured by a false statement in violation of 18 U.S.C. § 1542, and aggravated identity theft in violation of 18 U.S.C. § 1028A. On July 27, 2009, defendant moved *in limine* to exclude evidence of defendant's prior acquisition of a fraudulent passport under the name Ralph Nathan Stokes, and, at oral argument on August 4, 2009, moved to strike references to that alias as surplusage, should his motion *in limine* be granted.

Also on August 4, 2009, the government orally moved *in limine* to exclude evidence that defendant sought the fraudulent passport at issue in order to visit his family.

For the reasons set forth below, both defendant's and the government's motions are granted.

## BACKGROUND

This opinion assumes familiarity with the procedural history of this case. The facts below reflect a summary of the findings made by the court in its order denying defendant's motion to suppress incriminatory statements made to agents of the United States Customs and

1

Border Patrol ("CBP") and the Department of State ("DOS") on November 2 and 3, 2008. *See generally United States v. Miller*, 08-cr-860 (DLI), 2009 WL 2182382 (E.D.N.Y. July 21, 2009).

Defendant arrived at John F. Kennedy International Airport ("JFK") airport on November 2, 2003 and was escorted by a flight attendant to the CBP primary passport control area, where he presented a passport in the name "Martin David Morris." He was immediately referred to secondary review because a National Crime Information Check revealed an outstanding warrant for his purported identity.

CBP Officers Victor Marrero and Frank Umowski conducted a secondary inspection of defendant and identified a number of discrepancies between the data available for Martin David Morris and the information offered by defendant. After interrogation, defendant effectively admitted to Officer Umowski that he was not Mr. Morris by providing his real social security number. That allowed the officer to discover an outstanding 1996 warrant issued by the Southern District of New York, based on defendant's efforts to obtain a passport in the name "Ralph Nathan Stokes." Officer Umowski contacted the DOS as the originating agency on the warrant, and transported defendant to meet with DOS Special Agent Eric Doelan, who arrested defendant.

After waiving his *Miranda* rights, defendant told Agent Doelan that he knew Mr. Stokes, who was in prison at the time, "very well" through an ex-girlfriend, Rosetta Stokes. (Hearing Tr. at 71:1-5.)[1] He stated that he did not purchase the name and identifiers or use them for financial gain, but wanted the passport to visit his children in Jamaica. Defendant "fled and went underground" when DOS agents tried to locate him based on the fraudulent passport in the name of Mr. Stokes. (*Id.* at 71:8-11.)

---

[1] "Hearing Tr." refers to the transcript of the hearing on defendant's motion to suppress held on June 16, 2009.

Defendant also admitted to Agent Doelan that he obtained the David Martin Morris passport and other documents from a person named Paul Perkins and that he used that identity for travel, not for financial gain. Defendant indicated that, although "of course" he believed that Mr. Morris was a real person and wanted to meet him, he was prevented from doing so by Mr. Perkins, who assured defendant that Mr. Morris "was in no trouble because he lived with his mother." (*Id.* at 71:13-22.) Defendant lived in the United Kingdom after acquiring the Martin David Morris identity, but was deported to the United States for overstaying the term of his visa.

## DISCUSSION

### I. Defendant's Motion *in Limine* to Exclude Evidence of Prior Bad Act

Although defendant is charged with the use of a passport secured by a false statement and aggravated identity theft, defendant indicated in his motion *in limine* that he will only contest the aggravated identity theft charge at trial. (*See* Def.'s Mot. *in Limine* at 1.) To prevail on that charge, the government must show that defendant used Mr. Morris's identity to obtain a fraudulent passport with the knowledge that Mr. Morris was a real person. *See Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1888 (2009) (holding that a person is guilty of identity theft only if he is aware that the identity he used belonged to a real person). The government hopes to introduce evidence of defendant's 1996 acquisition of a fraudulent passport under the name Ralph Nathan Stokes, to show that the defendant had knowledge of DOS passport requirements and that the use of a real person's identity was necessary to obtain a passport. Defendant seeks to preclude presentation of evidence concerning that 1996 passport fraud.

#### A. Legal Standard

The admissibility of evidence concerning defendant's prior bad acts is governed by Federal Rule of Evidence 404(b), which provides, in relevant part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Fed. R. Evid. 404(b). Assuming some relevant purpose, the court must also scrutinize such evidence under Federal Rule of Evidence 403 to determine if its probative value is substantially outweighed by the potential for unfair prejudice. *See* Fed. R. Evid. 403; *United States v. Gilan*, 967 F.2d 776, 782 (2d Cir. 1992). The Second Circuit has adopted "an inclusionary approach" to Rule 404(b) evidence, precluding admission only when evidence of other bad acts is offered to demonstrate the defendant's criminal propensity. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (internal quotation marks omitted). Under *United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003), such evidence is correctly admitted if: "(1) it [is] offered for a proper purpose; (2) it [is] relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible [unfair] prejudice; and (4) the trial court administer[s] a proper limiting instruction." *Id.* at 176 (citations omitted).

The Second Circuit's inclusionary approach "does not obviate the need to identify the fact or issue to which the evidence is relevant." *United States v. Mercado*, No. 08-cr-1017, 2009 WL 2096234, at *5 (2d Cir. July 17, 2009) (internal quotation marks omitted). Evidence of prior acts "should not be admitted as proof of the defendant's knowledge or intent unless the other act is sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge or intent inference advocated by the proponent of the evidence." *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) (internal quotation marks omitted); *see also Mercado*, 2009 WL 2096234 at *5 ("There must be a clear connection between the prior act evidence and a disputed issue at trial," and "when prior act evidence is offered to prove a defendant's intent or

knowledge, it must be similar to the charged offense."); *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (probative value of other bad act "depends largely on whether or not there is a close parallel between the crime charged and the acts shown") (citation and internal quotation marks omitted).

## B. Probative Value

The court is not persuaded by the government's claim that defendant's prior bad act is probative evidence of his knowledge of DOS passport requirements and that the use of a real person's identity was necessary to obtain a passport. The 1996 passport fraud is similar in many ways to the instant case, despite the substantial lapse of time between the two incidents. In both instances, defendant assumed an identity and fraudulently applied for a United States passport under that identity, for travel to visit his family. There is even evidence that defendant may have attempted to purchase both identities. Specifically, Agent Doelan's interview notes from November 2, 2008, submitted by the government in opposition to defendant's motion to suppress statements, indicate that Mr. Stokes "did not agree to selling [his] id." Similarly, in the instant case, defendant confessed to purchasing the Martin Morris identity from Paul Perkins. However, the two cases diverge with respect to the critical inquiry in this case—whether defendant knew that Martin David Morris was a real person.

The government argues that defendant's use in 1996 of an identity belonging to someone he actually knew shows that defendant wanted to ensure that the identity belonged to a real person. However, the government has not presented, and indicated at oral argument that it does not intend to present, evidence showing that defendant's knowledge that Mr. Stokes was a real person played any role in his use of that particular identity to perpetrate passport fraud. Simply put, the fact that defendant had a personal relationship with Mr. Stokes does not, without more,

5

indicate that he knew that DOS would not approve his passport application unless he presented an identity belonging to a real person.

Before purchasing the Morris identity from a third party, defendant made inquiries relevant to his knowledge and intent as to the acquisition of that identity. For instance, defendant asked to meet Mr. Morris, and sought reassurance that Mr. Morris was in no trouble. More significantly, when asked whether he believed Mr. Morris to be a real person, the defendant stated "of course." No such inquiries were necessary with respect to Mr. Stokes. Thus, the 1996 passport fraud does not inform an inquiry into defendant's knowledge that Morris was a real person, which will be the sole disputed issue at trial. *See Aminy*, 15 F.3d at 260.

The court, nevertheless, does find that evidence of defendant's 1996 fraud may be probative of his motive in acquiring the Morris identity. Defendant could not visit his family in the United Kingdom using either his true identity or the Stokes alias without inviting detection because of the outstanding warrant for his arrest issued by the Southern District of New York for the 1996 fraud. Although the government need not prove motive to satisfy the requirements of the aggravated identity fraud statute, evidence directly relevant to showing motive is "plainly . . . admissible under Rule 404(b)." *United States v. Blum*, 62 F.3d 63, 68 (2d Cir. 1995).

### C. Potential for Unfair Prejudice to Defendant

Even if evidence of the 1996 passport fraud is relevant to motive, the probative value of that evidence must be balanced against "the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The term "unfair prejudice," as to a criminal defendant, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The defense contends that defendant's prior bad act would likely cause the jury to determine defendant's guilt based on propensity. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.") The government's response does not defeat this contention, but rather appears to support it. For instance, in oral argument, the government argued that evidence of the 1996 fraud is relevant because it may:

> explain where the defendant was coming from in this process, when he was trying to get . . . these documents in support of the passport, knowing that he . . . got the passport in the past using the same means . . . It shows why he's doing what he is doing. It shows why he's taking the steps that he is taking. All those steps, without that information, the jury will have a hard time understanding . . . that he was trying to make himself take the place of this person [Morris] in the same way that he had done it in the past . . . and this is significant as well, that it's ten years after that passport [under the name Stokes] was issued.

(Tr. of 9/4/09 Status Conference at 13:17-14:9.) This argument may clearly mislead jurors into "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged," especially because the prior bad act also involves use of a fraudulent passport. *Old Chief*, 519 U.S. at 180.

The limited probative value of defendant's 1996 passport fraud is thus substantially outweighed by the danger of unfair prejudice or confusion of issues. The government need not prove motive to prevail at trial on the charges in the indictment. *See United States v. MacPherson*, 424 F.3d 183 n.2 (2d Cir. 2005) (explaining that, although a jury may weigh evidence of motive in considering whether "to infer guilty knowledge and intent," motive "is not an element of the crime, and, thus, the lack of evidence on this point does not, as a matter of law, preclude conviction"). What the government does need to show is that defendant was aware that the identity he used belonged to a real person and that he knowingly used that identity to obtain a

fraudulent passport. *See Flores-Figueroa*, 129 S.Ct. at 1888. Admission of the 1996 passport fraud is not relevant to that inquiry. (*See supra* Section IB.)

Accordingly, defendant's motion to preclude is granted, except that the government may ask the court to reconsider its ruling if the defendant opens to the door to admission of the prior bad act, either in presenting his defense or through his questions to government witnesses.

## II. Defendant's Motion to Strike References to the "Ralph Nathan Stokes" Alias

Defendant moves to strike language pertaining to Ralph Nathan Stokes from the indictment and case caption as surplusage, should he prevail on his motion *in limine*. Federal Rule of Criminal Procedure 7(d) states that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." However, a motion to strike surplusage from an indictment is only appropriate "where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (internal quotation marks and citation omitted). The court agrees that references to the "Ralph Nathan Stokes" alias are irrelevant to the crime charged and prejudicial in light of the court's decision to grant defendant's motion *in limine* to exclude evidence regarding the 1996 passport fraud. Accordingly, this motion is granted.

## III. Government's Motion *in Limine* to Exclude Evidence that Defendant Intended to Use Fraudulent Passport to Visit Family Members

The government moves to exclude evidence that the defendant's motive in acquiring the fraudulent passport at issue was to visit his family members. District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice. *See* Fed. R. Evid. 403, Adv. Comm. Notes (the court may exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). Evidence of defendant's motive in acquiring the fraudulent

8

passport at issue has limited probative value. (*See supra* at Section I.) Weighed against admission of this evidence is its potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offences. This risk is especially serious where the jury will not be hearing evidence regarding the 1996 passport fraud, which might have cast a less favorable light on defendant's motives in seeking the Morris passport and related identifiers. Accordingly, evidence pertaining to defendant's intent to use the passport to visit his family is excluded.

## CONCLUSION

For the reasons set forth above, defendant's motions to exclude evidence of a prior bad act and to strike references to the "Ralph Nathan Stokes" in the indictment and case caption are granted. The government's motion to exclude evidence that defendant intended to use a fraudulent passport to visit his family is also granted.

SO ORDERED

DATED:　　Brooklyn, New York
　　　　　　August 10, 2009

　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　United States District Judge